FILED

2018 JUL -6 PM 4:08

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY:___

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2018 Grand Jury

UNITED STATES OF AMERICA,

        Plaintiff,

        v.

LISA KAY CAMP,
  aka "Mindy Price,"
  aka "Roxy,"
BARRY LEE BIDDLE,
  aka "Andrew,"
  aka "John,"
ANDREA MAUREEN AVILES,
  aka "Abby,"
  aka "Michelle Banks,"
GERALD JAMES CAMP,
  aka "Gerry,"
  aka "Roger,"
  aka "Andrew," and
ALLISA LYNN VASQUEZ,
  aka "Gracie,"

        Defendants.

ED CR No. 18 EDCR 18-200-SVW

I N D I C T M E N T

[18 U.S.C. § 1343: Wire Fraud; 18
U.S.C. § 1349: Conspiracy to
Commit Wire Fraud; 18 U.S.C.
§ 2(a): Aiding and Abetting]

The Grand Jury charges:

COUNTS ONE THROUGH FOUR

[18 U.S.C. §§ 1343, 2(a)]

A.   INTRODUCTORY ALLEGATIONS

    1.  At all times relevant to this Indictment:

1       a.   Defendants LISA KAY CAMP, also known as ("aka") "Mindy
2  Price," aka "Roxy" ("L. CAMP"), BARRY LEE BIDDLE, aka "Andrew," aka
3  "John" ("BIDDLE"), ANDREA MAUREEN AVILES, aka "Abby," aka "Michelle
4  Banks" ("AVILES"), GERALD JAMES CAMP, aka "Gerry," aka "Roger," aka
5  "Andrew" ("G. CAMP"), and ALLISA LYNN VASQUEZ, aka "Gracie"
6  ("VASQUEZ"), were supervisors or employees of a telemarketing
7  business (the "telemarketing business") which operated a call center
8  located in Riverside County, California.

9       b.   The name of the telemarketing business changed several
10 times and included "Contractor Management, "Contracting Crews,"
11 "Construction Crews," "Trade Crews," "Contractor 411," "Fed Check,"
12 "Commercial Crews," "US Tradepros," "US Workmen," "IPower Marketing,"
13 and "IPower Marketing and Productions."

14      c.   "Fed Check" maintained a separate website which
15 purported to be that of security company which conducted background
16 checks.

17 B.   THE SCHEME TO DEFRAUD

18      2.   Beginning on a date unknown to the Grand Jury, but at least
19 as early as in or about May 2009, and continuing through on or about
20 July 30, 2013, in Riverside County, within the Central District of
21 California, and elsewhere, defendants L. CAMP, BIDDLE, AVILES,
22 G. CAMP, and VASQUEZ, together with others known and unknown to the
23 Grand Jury, knowingly and with intent to defraud, devised,
24 participated in, and executed a scheme to defraud victim job seekers
25 as to material matters, and to obtain money and property from the
26 victim job seekers by means of false and fraudulent pretenses,
27 representations, and promises, and the concealment of material facts.

28

1      3.     The fraudulent scheme operated, in substance, in the
2 following ways, among others:

3     **Summary**

4        a.     Between approximately May 2009 and July 30, 2013,
5 defendants, collectively acting through the telemarketing business,
6 defrauded victim job seekers by making false statements and
7 guarantees, and omitting material information, regarding the
8 telemarketing business's ability and intention to find job leads and
9 work orders for the victim job seekers and the nature of a background
10 check which the victim job seekers were told was necessary to undergo
11 before being sent job leads and work orders.

12     **Operation of the Telemarketing Business**

13        b.     The telemarketing business contacted prospective job
14 seekers using an auto-dialer service.

15        c.     The telemarketing business employed salespersons to
16 speak by telephone with members of the public who were interested in
17 obtaining a job or paying work. Using scripts provided to the
18 salespersons by the telemarketing business's supervisors, the
19 salespersons would tell the victim job seeker that the telemarketing
20 business had contracts with banks which needed workers to repair
21 properties in the victim job seeker's geographic area. The
22 salespersons would guarantee that work was available in the victim
23 job seeker's geographic area. The salespersons would tell the victim
24 job seeker that the telemarketing business had contracts with banks
25 which owned these properties and that the telemarketing business
26 could provide leads to the victim job seekers for paid positions
27 refurbishing and repairing the properties.

28

1           d.    The victim job seekers were told that, to become
2  eligible for these job leads and work orders, the victim job seeker
3  must first pass a background check that was required by the bank and
4  that the victim job seeker had to pay a fee of $39, $60, or $99 for
5  the background check, which could be paid over the telephone or on
6  the Internet via the Fed Check website.  The victim job seekers were
7  told that if they did not pass the background check, the background
8  check fee would be refunded.

9           e.    After paying for the background check, the victim job
10  seekers were told that they would receive job leads and work orders
11  via e-mail or would receive job leads and work orders directly from
12  the banks.

13          f.    The telemarketing business kept the background check
14  fee, which was deposited into a bank account controlled by the
15  telemarketing business and then typically transferred to one or more
16  additional bank accounts controlled by the telemarketing business.
17  Bank accounts of the telemarketing business received total deposits
18  in excess of approximately $3 million in background check fees.

19          g.    Supervisors of the telemarketing business would lie to
20  new employees about the nature of the telemarketing business,
21  including the existence of contracts with banks, the necessity of
22  background checks, and how the telemarketing business was
23  compensated.

24          h.    Salespersons generally were paid between $5 and $25
25  per sale.

26          i.    Most employees of the telemarketing business were paid
27  in cash without any income being withheld by the telemarketing
28  business.

4

**The Defendants' Roles**

j.   Defendant L. CAMP owned and operated the telemarketing business and its call center.  Defendant L. CAMP supervised all supervisors and employees of the telemarketing business.

k.   Defendant BIDDLE set up, maintained, and operated the websites used by the telemarketing business, including the Fed Check website, which was used to accept payments for the background check fees collected by the telemarketing business.  These websites were used to convince victim job seekers that the telemarketing business, including Fed Check, was legitimate.  Defendant BIDDLE also set up and maintained an auto-dialer service used by the telemarketing business to contact potential job seekers.

l.   Defendants AVILES, G. CAMP, and VASQUEZ were employees of the telemarketing business who served as supervisors at the telemarketing business's call center.

i.   Defendant AVILES's role included recruiting new salespersons for the call center, managing salespersons at the call center, and communicating with victim job seekers who called to complain about the telemarketing business.

ii.   Defendant G. CAMP's role included hiring, training, and managing call center salespersons.

iii. Defendant VASQUEZ's role included handling payments from victim job seekers, including credit card payments and "checks by phone," and payroll for the telemarketing business's employees.

**False Statements to Victim Job Seekers**

m.   The telemarketing business, through its websites and its salespersons, acting at the direction of defendants L. CAMP,

AVILES, G. CAMP, and VASQUEZ, would make the following false statements, among others, when speaking to or otherwise communicating with victim job seekers:

      i.   Statements that the telemarketing business had contracts with banks involving bank-owned properties;

      ii.   Statements and guarantees that the telemarketing business or the banks with which it purportedly contracted would provide job leads and work orders to the victim job seekers;

      iii. Statements and guarantees that work repairing bank-owned properties was available in the victim job seeker's geographic area;

      iv.   Statements and guarantees about the intention of the telemarketing business to provide job leads and work orders to the victim job seekers;

      v.   Statements regarding the name or geographic location of the salesperson;

      vi.   Statements that the banks required the victim job seekers to pass a background check before any job leads and work orders could be provided;

      vii. Statements that the telemarketing business would use the money collected from victim job seekers for purposes of conducting a background check on the victim job seeker; and

      viii.   Statements that the business would refund the background check fee if the victim job seeker did not pass the background check.

      n.   In truth, as defendants then well knew:

      i.   The telemarketing business had no contracts with any banks involving bank-owned properties;

1          ii.   The telemarketing business had no intention of

2    providing job leads and work orders for bank-owned properties to the

3    victim job seekers;

4          iii.  The telemarketing business's call center was

5    located in Riverside County, California, and not in the various

6    locations claimed by salespersons during telephone calls with victim

7    job seekers;

8          iv.   The background check described by the

9    salespersons was a fraudulent process used by the telemarketing

10   business as a pretext for collecting money from the victim job

11   seekers;

12         v.    No refunds were provided for the background

13   check; and

14         vi.   The money provided for the background check was

15   not used to pay for any background check.

16   ///

17   ///

18

19

20

21

22

23

24

25

26

27

28

7

C.   THE USE OF THE WIRES

4.    On or about the dates set forth below, in Riverside County, within the Central District of California, and elsewhere, defendants L. CAMP, BIDDLE, AVILES, G. CAMP, and VASQUEZ, and other co-schemers known and unknown to the Grand Jury, aiding and abetting one another, for the purpose of executing and attempting to execute the above-described scheme to defraud, transmitted and caused the transmission of the following items of wire communication in interstate and foreign commerce:

| COUNT | DATE | ITEM WIRED |
|-------|------|------------|
| ONE | July 10, 2013 | Wire communication from California to New York caused by the deposit of $1,089.00 which included background check fees |
| TWO | July 12, 2013 | Wire communication from California to New York caused by the deposit of $1,089.00 which included background check fees |
| THREE | July 17, 2013 | Wire communication from California to New York caused by the deposit of $1,089.00 which included background check fees |
| FOUR | July 26, 2013 | Wire communication from California to New York caused by the deposit of $495.00 which included background check fees |

COUNT FIVE

[18 U.S.C. § 1349]

A.   INTRODUCTORY ALLEGATIONS

5.   The Grand Jury hereby re-alleges and incorporates by reference paragraph 1 of this Indictment as though set forth fully herein.

B.   OBJECT OF THE CONSPIRACY

6.   Beginning on a date unknown to the Grand Jury, but at least as early as in or about May 2009, and continuing through on or about July 30, 2013, in Riverside County, within the Central District of California, and elsewhere, defendants LISA KAY CAMP, also known as ("aka") "Mindy Price," aka "Roxy" ("L. CAMP"), BARRY LEE BIDDLE, aka "Andrew," aka "John" ("BIDDLE"), ANDREA MAUREEN AVILES, aka "Abby," aka "Michelle Banks" ("AVILES"), GERALD JAMES CAMP, aka "Gerry," aka "Roger," aka "Andrew" ("G. CAMP"), and ALLISA LYNN VASQUEZ, aka "Gracie" ("VASQUEZ"), together with others known and unknown to the Grand Jury, knowingly combined, conspired, and agreed with each other to commit an offense against the United States, namely, Wire Fraud, in violation of Title 18, United States Code, Section 1343.

///

///

C.   THE MANNER AND MEANS OF THE CONSPIRACY

7.   The Grand Jury hereby re-alleges and incorporates by reference paragraph 3 of this Indictment as though set forth fully herein.

D.   OVERT ACTS

8.   On or about the following dates, in furtherance of the conspiracy and to accomplish its object, defendants L. CAMP, BIDDLE, AVILES, G. CAMP, and VASQUEZ, and others known and unknown to the Grand Jury, committed and caused others to commit various acts within the Central District of California, and elsewhere, including, but not limited to, the following:

Overt Act No. 1:   On or about July 10, 2013, defendant L. CAMP caused the deposit of $1,089.00 which included background check fees.

Overt Act No. 2:   On or about July 12, 2013, defendant L. CAMP caused the deposit of $1,089.00 which included background check fees.

Overt Act No. 3:   On or about July 17, 2013, defendant L. CAMP caused the deposit of $1,089.00 which included background check fees.

///

///

1    <u>Overt Act No. 4:</u>    On or about July 26, 2013, defendant L. CAMP

2    caused the deposit of $495.00 which included background check fees.

                                    A TRUE BILL

                                       /S/
                           _____
                           Foreperson

     NICOLA T. HANNA
     United States Attorney

     Scott Garringer
     Deputy Chief, Criminal Division For:
     LAWRENCE S. MIDDLETON
     Assistant United States Attorney
     Chief, Criminal Division

     JOSEPH B. WIDMAN
     Assistant United States Attorney
     Chief, Riverside Branch Office