NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
JULIUS J. NAM (Cal. Bar No. 288961)
Assistant United States Attorney
Riverside Branch Office
    3403 10th Street, Ste. 200
    Riverside, California 92501
    Telephone: (951) 276-6942
    Facsimile: (951) 276-6202
    Email: julius.nam@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

<div align="center">

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

</div>

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. ED CR 18-200-SVW-2 |
|     Plaintiff, | PLEA AGREEMENT FOR |
|         v. | DEFENDANT BARRY LEE BIDDLE |
| LISA KAY CAMP, et al., | |
|   — BARRY LEE BIDDLE (Def. #2) | |
|     Defendants. | |

1.    This constitutes the plea agreement between BARRY LEE BIDDLE ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

<div align="center">

DEFENDANT'S OBLIGATIONS

</div>

2.    Defendant agrees to:

    a.    At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to count five of the indictment in United States v. LISA KAY CAMP, et al., ED CR No. 18-

200-SVW-2, which charges defendant with Conspiracy to Commit Wire Fraud in violation of Title 18, United States Code, Section 1349.

     b.   At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to counts one through seven of the indictment in United States v. Barry Lee Biddle, ED CR No. 18-150-AB, which charges defendant with bank fraud, in violation of 18 U.S.C. § 1344(2), pursuant to the terms set forth in the plea agreement attached as Exhibit A.

     c.   Not contest facts agreed to in this agreement.

     d.   Abide by all agreements regarding sentencing contained in this agreement.

     e.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

     f.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

     g.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

     h.   Recommend that defendant be sentenced to a term of imprisonment no lower than the high end of the applicable Sentencing Guidelines range, provided that the total offense level used by the Court to determine that range is 28 or lower. For purposes of this agreement, the high end of the Sentencing Guidelines range is that defined by the Sentencing Table in U.S.S.G. Chapter 5, Part A.

     i.   Pay the applicable special assessment at or before the time of sentencing unless defendant lacks the ability to pay and

2

prior to sentencing submits a completed financial statement on a form to be provided by the USAO.

j. Agree to and not oppose the imposition of the following condition of probation or supervised release: Defendant shall not work in any capacity as a telemarketer or in any role which involves supervision or management of telemarketers or telemarketing activity. "Telemarketing" is defined as a method of direct marketing in which a salesperson solicits prospective customers to buy products or services, either over the phone or through a subsequent face to face or Web conferencing appointment scheduled during the call.

k. Not seek the discharge of any restitution obligation, in whole or in part, in any present or future bankruptcy proceeding.

<u>THE USAO'S OBLIGATIONS</u>

3. The USAO agrees to:

a. Not contest facts agreed to in this agreement.

b. Abide by all agreements regarding sentencing contained in this agreement.

c. At the time of sentencing, move to dismiss the remaining counts of the indictment as against defendant. Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

d. At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to

3

1  U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

2  additional one-level reduction if available under that section.

3      e.   Recommend that defendant be sentenced to a term of

4  imprisonment no higher than the high end of the applicable Sentencing

5  Guidelines range, provided that the total offense level used by the

6  Court to determine that range is 22 or higher.  For purposes of this

7  agreement, the high end of the Sentencing Guidelines range is that

8  defined by the Sentencing Table in U.S.S.G. Chapter 5, Part A.

9      f.   Provided that, at the time of sentencing in this case,

10 defendant has already been sentenced in <u>United States v. Barry Lee</u>

11 <u>Biddle</u>, ED CR No. 18-150-AB (the "other case"), recommend that the

12 sentence in the instant matter be ordered by the Court to run

13 concurrently to the sentence imposed in the other case.

14 <div align="center"><u>NATURE OF THE OFFENSE</u></div>

15 4.   Defendant understands that for defendant to be guilty of

16 the crime charged in count five of the indictment, that is,

17 Conspiracy to Commit Wire Fraud in violation of Title 18, United

18 States Code, Section 1349, the following must be true:

19     a.   First, beginning in or about May 2009, and ending on

20 or about July 30, 2013, there was an agreement between two or more

21 persons to commit Wire Fraud as charged in the indictment; and

22     b.   Second, defendant became a member of the conspiracy

23 knowing of its object and intending to help accomplish it.

24 5.   Defendant understands that to be guilty of Wire Fraud as

25 charged in the indictment, the following must be true:

26     a.   First, defendant knowingly participated in or devised

27 a scheme plan to defraud, or a scheme or plan for obtaining money or

28

<div align="center">4</div>

property by means of false or fraudulent pretenses, representations, or promises;

b.    Second, the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

c.    Third, defendant acted with the intent to defraud, that is, the intent to deceive or cheat; and

d.    Fourth, defendant used, or caused to be used, an interstate wire communication to carry out or attempt to carry out an essential part of the scheme.

<u>PENALTIES AND RESTITUTION</u>

6.    Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1349, is: 20 years' imprisonment; a 3-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

7.    Defendant understands that defendant will be required to pay full restitution to the victim(s) of the offense to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victim(s) of the offenses to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct,

as defined in U.S.S.G. § 1B1.3, in connection with the offense to which defendant is pleading guilty; and (b) any counts dismissed pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those counts.  The parties currently believe that the applicable amount of restitution is approximately $2,181,316.42, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

8.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

9.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that once the Court accepts defendant's guilty plea, it will be a federal felony for defendant to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that

unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

10. Defendant understands that, if defendant is not a United States citizen, the felony conviction in this case may subject defendant to: removal, also known as deportation, which may, under some circumstances, be mandatory; denial of citizenship; and denial of admission to the United States in the future. The Court cannot, and defendant's attorney also may not be able to, advise defendant fully regarding the immigration consequences of the felony conviction in this case. Defendant understands that unexpected immigration consequences will not serve as grounds to withdraw defendant's guilty plea.

FACTUAL BASIS

11. Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty. Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 13 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

a. Overview

From in or about May 2009 through July 30, 2013, in Riverside County, California, there was an agreement between two or more people to commit the crime of wire fraud. The agreement, or conspiracy, operated under the auspices of a telemarketing business which used several names, including "Contractor Management" (the "Company").

7

"Fed Check" was a separate company which maintained a separate website which purported to be that of security company which conducted background checks.  Members of the conspiracy owned and controlled "Fed Check."

Defendant worked at the Company from in or about May 2009 through July 30, 2013.  While defendant worked at the Company, defendant knew that it was defrauding people by making false statements and guarantees, and omitting material information, regarding the Company's ability and intention to find job leads and work orders for the victim job seekers and the nature of a background check which the victim job seekers were told was necessary to undergo before being sent job leads and work orders.  Defendant knew that the purpose of this conduct was to cause the job seekers to pay for background checks which the job seekers were told would be conducted by Fed Check.  Defendant knew that defendant was participating in a fraud, but did it anyway because defendant wanted money.

      b.   <u>How the scheme worked</u>

The telemarketing business contacted prospective job seekers using an auto-dialer service.  The telemarketing business employed salespersons to speak by telephone with members of the public who were interested in obtaining a job or paying work.  Using scripts provided to the salespersons by the telemarketing business's supervisors, including defendant, the salespersons would make the false statements and omit the material information set forth below. The salespersons made these statement and omissions in an attempt to convince the job seeker to pay for a fee of $39, $60, or $99 for the background check, which could be paid over the telephone or on the Internet via the Fed Check website.  The victim job seekers were told

that if they did not pass the background check, the background check fee would be refunded.  The telemarketing business kept the background check fee, which was deposited by the Company into a bank account controlled by the telemarketing business, which deposits involved interstate wire communications.  This scheme that defendant participated in defrauded more than ten victim job seekers.  The aggregated amount of monetary loss to victim job seekers incurred by this scheme was approximately $2,181,316.42.

Supervisors of the telemarketing business would lie to new employees about the nature of the telemarketing business, including the existence of contracts with banks, the necessity of background checks, and how the telemarketing business was compensated.

c.   <u>False statements to victim job seekers</u>

The telemarketing business, through its websites and its salespersons would make the following false statements, among others, when speaking to or otherwise communicating with victim job seekers:

i.   Statements that the telemarketing business had contracts with banks involving bank-owned properties;

ii.   Statements and guarantees that the telemarketing business or the banks with which it purportedly contracted would provide job leads and work orders to the victim job seekers;

iii. Statements and guarantees that work repairing bank-owned properties was available in the victim job seeker's geographic area;

iv.   Statements and guarantees about the intention of the telemarketing business to provide job leads and work orders to the victim job seekers;

v.   Statements regarding the name or geographic location of the salesperson;

vi.   Statements that the banks required the victim job seekers to pass a background check before any job leads and work orders could be provided;

vii. Statements that the telemarketing business would use the money collected from victim job seekers for purposes of conducting a background check on the victim job seeker; and

viii.   Statements that the business would refund the background check fee if the victim job seeker did not pass the background check.

d.   The truth

In truth, as defendant knew while defendant worked at the Company:

i.   The telemarketing business had no contracts with any banks involving bank-owned properties;

ii.   The telemarketing business had no intention of providing job leads and work orders for bank-owned properties to the victim job seekers;

iii. The telemarketing business's call center was located in Riverside County, California, and not in the various locations claimed by salespersons during telephone calls with victim job seekers;

iv.   The background check described by the salespersons was a fraudulent process used by the telemarketing business as a pretext for collecting money from the victim job seekers;

1          v.    No refunds were provided for the background

2    check; and

3          vi.   The money provided for the background check was

4    not used to pay for any background check.

5                          SENTENCING FACTORS

6          12.   Defendant understands that in determining defendant's

7    sentence the Court is required to calculate the applicable Sentencing

8    Guidelines range and to consider that range, possible departures

9    under the Sentencing Guidelines, and the other sentencing factors set

10   forth in 18 U.S.C. § 3553(a).  Defendant understands that the

11   Sentencing Guidelines are advisory only, that defendant cannot have

12   any expectation of receiving a sentence within the calculated

13   Sentencing Guidelines range, and that after considering the

14   Sentencing Guidelines and the other § 3553(a) factors, the Court will

15   be free to exercise its discretion to impose any sentence it finds

16   appropriate up to the maximum set by statute for the crime of

17   conviction.

18         13.   Defendant and the USAO agree to the following applicable

19   Sentencing Guidelines factors:

20   Base Offense Level:            7      [U.S.S.G. § 2B1.1(a)(1)]

21   Loss Amount: More than $1.5    +16    [U.S.S.G. § 2B1.1(b)(1)(I)]
22   million

     More Than 10 Victims          +2     [U.S.S.G. § 2B1.1(b)(2)(A)]
23

24   Defendant and the USAO reserve the right to argue that additional

25   specific offense characteristics, adjustments, and departures under

26   the Sentencing Guidelines are appropriate.

27         14.   Defendant understands that there is no agreement as to

28   defendant's criminal history or criminal history category.

                                    11

15.   Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

16.   Defendant understands that by pleading guilty, defendant gives up the following rights:

a.    The right to persist in a plea of not guilty.

b.    The right to a speedy and public trial by jury.

c.    The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

d.    The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.    The right to confront and cross-examine witnesses against defendant.

f.    The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.    The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.    Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

17.  Understanding that the government has in its possession digital devices and/or digital media seized from defendant, defendant waives any right to the return of digital data contained on those digital devices and/or digital media and agrees that if any of these digital devices and/or digital media are returned to defendant, the government may delete all digital data from those digital devices and/or digital media before they are returned to defendant.

## WAIVER OF APPEAL OF CONVICTION

18.  Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

## LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

19.  Defendant agrees that, provided the Court imposes a total term of imprisonment on all counts of conviction of no more than 78 months and imposes terms of imprisonment and supervised release that are not consecutive to the terms of imprisonment and supervised release imposed in United States v. Barry Lee Biddle, ED CR No. 18-150-AB, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the

13

constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the amount and terms of any restitution order, provided it requires payment of no more than $2.2 million; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in General Orders 318 and 18-10 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7); and the condition of probation or supervised release agreed to by defendant in paragraph 2 above.

20.  Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

21.  The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment of no less than 30 months, the USAO gives up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to

appeal the amount of restitution ordered if that amount is less than $2,181,316.42.

<div align="center">RESULT OF WITHDRAWAL OF GUILTY PLEA</div>

22.  Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

<div align="center">EFFECTIVE DATE OF AGREEMENT</div>

23.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

<div align="center">BREACH OF AGREEMENT</div>

24.  Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO

<div align="center">15</div>

may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

25.  Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a.   Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.   Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.   Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal

16

1    Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal

2    Procedure, or any other federal rule, that the statements or any

3    evidence derived from the statements should be suppressed or are

4    inadmissible.

<div align="center">

COURT AND UNITED STATES PROBATION AND

PRETRIAL SERVICES OFFICE NOT PARTIES

</div>

7       26.   Defendant understands that the Court and the United States

8    Probation and Pretrial Services Office are not parties to this

9    agreement and need not accept any of the USAO's sentencing

10    recommendations or the parties' agreements to facts or sentencing

11    factors.

12       27.   Defendant understands that both defendant and the USAO are

13    free to: (a) supplement the facts by supplying relevant information

14    to the United States Probation and Pretrial Services Office and the

15    Court, (b) correct any and all factual misstatements relating to the

16    Court's Sentencing Guidelines calculations and determination of

17    sentence, and (c) argue on appeal and collateral review that the

18    Court's Sentencing Guidelines calculations and the sentence it

19    chooses to impose are not error, although each party agrees to

20    maintain its view that the calculations in paragraph 13 are

21    consistent with the facts of this case. While this paragraph permits

22    both the USAO and defendant to submit full and complete factual

23    information to the United States Probation and Pretrial Services

24    Office and the Court, even if that factual information may be viewed

25    as inconsistent with the facts agreed to in this agreement, this

26    paragraph does not affect defendant's and the USAO's obligations not

27    to contest the facts agreed to in this agreement.

28

28.   Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

29.   Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

///

///

///

18

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

30.   The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

NICOLA T. HANNA
United States Attorney

_____          Sept. 23, 2019
_____
JULIUS J. NAM                               Date
Assistant United States Attorney


_____          9-21-19
BARRY LEE BIDDLE                            Date
Defendant


_____          9-21-19
JELANI J. LINDSEY, Esq.                     Date
Deputy Federal Public Defender
Attorney for Defendant
BARRY LEE BIDDLE


CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences

19

1  of entering into this agreement.  No promises, inducements, or
2  representations of any kind have been made to me other than those
3  contained in this agreement.  No one has threatened or forced me in
4  any way to enter into this agreement.  I am satisfied with the
5  representation of my attorney in this matter, and I am pleading
6  guilty because I am guilty of the charge and wish to take advantage
7  of the promises set forth in this agreement, and not for any other
8  reason.

9  _____        9-21-19

10 BARRY LEE BIDDLE                        Date
   Defendant

12              CERTIFICATION OF DEFENDANT'S ATTORNEY

13      I am BARRY LEE BIDDLE's attorney.  I have carefully and
14 thoroughly discussed every part of this agreement with my client.
15 Further, I have fully advised my client of his rights, of possible
16 pretrial motions that might be filed, of possible defenses that might
17 be asserted either prior to or at trial, of the sentencing factors
18 set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines
19 provisions, and of the consequences of entering into this agreement.
20 To my knowledge: no promises, inducements, or representations of any
21 kind have been made to my client other than those contained in this
22 agreement; no one has threatened or forced my client in any way to
23 enter into this agreement; my client's decision to enter into this
24 ///
25 ///
26 ///

1    agreement is an informed and voluntary one; and the factual basis set

2    forth in this agreement is sufficient to support my client's entry of

3    a guilty plea pursuant to this agreement.

4

5    JELANI J. LINDSEY, Esq.                          9 - 2|-|9
     Deputy Federal Public Defender                   Date
6    Attorney for Defendant
     BARRY LEE BIDDLE
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                   21

**EXHIBIT A**

NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
EDWARD HAN (Cal. Bar No. 289390)
Assistant United States Attorney
General Crimes Section
    1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-8230
    Facsimile: (213) 894-0141
    E-mail:   edward.han@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. ED CR 18-150-AB |
|---|---|
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT BARRY LEE BIDDLE |
| v. | |
| BARRY LEE BIDDLE, | |
| Defendant. | |

1.   This constitutes the plea agreement between BARRY LEE BIDDLE ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

2.   Defendant agrees to:

a.   At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to counts one through seven of the indictment in United States v. Barry Lee Biddle, ED CR

1  No. 18-150-AB, which charge defendant with bank fraud, in violation
2  of 18 U.S.C. § 1344(2).

3       b.   At the earliest opportunity requested by the USAO and
4  provided by the court, appear and plead guilty to count five of the
5  indictment in <u>United States v. Lisa Kay Camp, et al.</u>, ED CR No. 18-
6  200-SVW-2, which charges defendant with conspiracy to commit wire
7  fraud, in violation of 18 U.S.C. § 1349, pursuant to the terms set
8  forth in the plea agreement attached as Exhibit A.

9       c.   Not contest facts agreed to in this agreement.

10      d.   Abide by all agreements regarding sentencing contained
11 in this agreement.

12      e.   Appear for all court appearances, surrender as ordered
13 for service of sentence, obey all conditions of any bond, and obey
14 any other ongoing court order in this matter.

15      f.   Not commit any crime; however, offenses that would be
16 excluded for sentencing purposes under United States Sentencing
17 Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not
18 within the scope of this agreement.

19      g.   Be truthful at all times with the United States
20 Probation and Pretrial Services Office and the Court.

21      h.   Pay the applicable special assessments at or before
22 the time of sentencing unless defendant lacks the ability to pay and
23 prior to sentencing submits a completed financial statement on a form
24 to be provided by the USAO.

25      i.   Not seek the discharge of any restitution obligation,
26 in whole or in part, in any present or future bankruptcy proceeding.

27                    <u>THE USAO'S OBLIGATIONS</u>

28      3.   The USAO agrees to:

                              2

a.   Not contest facts agreed to in this agreement.

b.   Abide by all agreements regarding sentencing contained in this agreement.

c.   At the time of sentencing, move to dismiss the remaining count of the indictment as against defendant.  Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

d.   At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offenses up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

e.   Provided that, at the time of sentencing in this case, defendant has already been sentenced in United States v. Lisa Kay Camp, et al., ED CR No. 18-200-SVW-2 (the "other case"), recommend that the sentence in the instant matter be ordered by the Court to run concurrently to the sentence imposed in the other case.

NATURE OF THE OFFENSES

4.   Defendant understands that for defendant to be guilty of the crime charged in counts one through seven, that is, bank fraud, in violation of Title 18, United States Code, Sections 1344(2), the following must be true: (1) defendant knowingly carried out a scheme or plan to obtain money or property from a financial institution by making false statements or promises; (2) defendant knew that the statements or promises were false; (3) the statements or promises

3

1    were material; that is, they had a natural tendency to influence, or

2    were capable of influencing, a financial institution to part with

3    money or property; (4) defendant acted with the intend to defraud;

4    and (5) the financial institution was federally insured.

5                          <u>PENALTIES AND RESTITUTION</u>

6         5.   Defendant understands that the statutory maximum sentence

7    that the Court can impose for each violation of Title 18, United

8    States Code, Sections 1344(2), is: 30 years' imprisonment; a five-

9    year period of supervised release; a fine of $1,000,000 or twice the

10   gross gain or gross loss resulting from the offense, whichever is

11   greatest; and a mandatory special assessment of $100.

12        6.   Defendant understands, therefore, that the total maximum

13   sentence for all offenses to which defendant is pleading guilty is:

14   210 years' imprisonment; a five-year period of supervised release; a

15   fine of $7,000,000 or twice the gross gain or gross loss resulting

16   from the offenses, whichever is greatest; and a mandatory special

17   assessment of $700.

18        7.   Defendant understands that defendant will be required to

19   pay full restitution to the victim(s) of the offense to which

20   defendant is pleading guilty.  Defendant agrees that, in return for

21   the USAO's compliance with its obligations under this agreement, the

22   Court may order restitution to persons other than the victim(s) of

23   the offenses to which defendant is pleading guilty and in amounts

24   greater than those alleged in the counts to which defendant is

25   pleading guilty.  In particular, defendant agrees that the Court may

26   order restitution to any victim of any of the following for any

27   losses suffered by that victim as a result: (a) any relevant conduct,

28   as defined in U.S.S.G. § 1B1.3, in connection with the offenses to

                                    4

which defendant is pleading guilty; and (b) any counts dismissed pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those counts.  The parties currently believe that the applicable amount of restitution is approximately $70,975.29, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

8.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

9.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that once the court accepts defendant's guilty plea, it will be a federal felony for defendant to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that

5

1    unanticipated collateral consequences will not serve as grounds to

2    withdraw defendant's guilty plea.

3        10.  Defendant understands that, if defendant is not a United

4    States citizen, the felony conviction in this case may subject

5    defendant to: removal, also known as deportation, which may, under

6    some circumstances, be mandatory; denial of citizenship; and denial

7    of admission to the United States in the future.  The court cannot,

8    and defendant's attorney also may not be able to, advise defendant

9    fully regarding the immigration consequences of the felony conviction

10   in this case.  Defendant understands that unexpected immigration

11   consequences will not serve as grounds to withdraw defendant's guilty

12   plea.

13   <u>FACTUAL BASIS</u>

14       11.  Defendant admits that defendant is, in fact, guilty of the

15   offenses to which defendant is agreeing to plead guilty.  Defendant

16   and the USAO agree to the statement of facts provided below and agree

17   that this statement of facts is sufficient to support pleas of guilty

18   to the charges described in this agreement and to establish the

19   Sentencing Guidelines factors set forth in paragraph 13 below but is

20   not meant to be a complete recitation of all facts relevant to the

21   underlying criminal conduct or all facts known to either party that

22   relate to that conduct.

23       Beginning on a date unknown, and continuing through at least

24   June 2, 2017, in Riverside County, within the Central District of

25   California, and elsewhere, defendant, knowingly and with the intent

26   to defraud, executed and attempted to execute a scheme to obtain

27   moneys, funds, assets, and other property owned by and in the custody

28   and control of Synchrony Bank ("Synchrony") by means of materially

1  false and fraudulent pretenses, representations, and promises, and

2  the concealment of material facts.

3      The fraudulent scheme operated, in substance, as follows:

4      a.   Defendant would obtain victims' names, addresses, and

5  other personal identifying information.

6      b.   Defendant would use victims' names, addresses, and

7  other personal identifying information to open CareCredit accounts,

8  which were administered by Synchrony Bank, without the victims'

9  permission or knowledge.

10      c.   Defendant would send the newly opened victims'

11  CareCredit account information to others.

12      d.   Defendant would also create fraudulent identities to

13  open CareCredit accounts.

14      e.   Others would charge the CareCredit accounts for

15  medical services that were not performed.

16      f.   Others would send defendant money which was part of

17  the earnings from the scheme.

18      g.   Defendant would submit change of address requests to

19  the United States Post Office for the real CareCredit victims' mail,

20  to divert CareCredit account statements from their real addresses to

21  another address.

22      On the following dates, in Riverside County, within the Central

23  District of California, and elsewhere, defendant committed the

24  following acts, which constituted an execution of the fraudulent

25  scheme:

26      a.   On February 2, 2017, defendant submitted an

27  application to open a CareCredit account for victim J.F., without

28  victim J.F.'s knowledge or consent.

7

1        b.   On February 4, 2017, defendant submitted an

2 application to open a CareCredit account for victim G.G., without

3 victim G.G.'s knowledge or consent.

4        c.   On February 4, 2017, defendant submitted an

5 application to open a CareCredit account for victim C.H., without

6 victim C.H.'s knowledge or consent.

7        d.   On February 4, 2017, defendant submitted an

8 application to open a CareCredit account for victim A.O., without

9 victim A.O.'s knowledge or consent.

10        e.   On February 4, 2017, defendant submitted an

11 application to open a CareCredit account for victim E.F., without

12 victim E.F.'s knowledge or consent.

13        f.   On February 5, 2017, defendant submitted an

14 application to open a CareCredit account for victim D.W., without

15 victim D.W.'s knowledge or consent.

16        g.   On February 5, 2017, defendant submitted an

17 application to open a CareCredit account for victim M.M., without

18 victim M.M.'s knowledge or consent.

19    After defendant opened CareCredit credit card accounts using

20 other people's names and social security numbers, which he knew

21 belonged to other persons, defendant had all of the credit card

22 statements sent to an address on N. Scovell Avenue in San Jacinto,

23 California, where a co-conspirator would pick them up and make

24 fraudulent charges on the cards.  Defendant's co-conspirator would

25 then send defendant a portion of the profits from the scheme.

26    Defendant changed at least 25 people's addresses through the

27 post office in order for the CareCredit credit card statements to be

28 sent to the N. Scovell Avenue address.  Defendant then paid a friend

1  five dollars for each piece of mail his friend received at that

2  address.   At least one of the victims, G.G., was older than 65 years

3  of age.

4         As a result of this scheme, defendant caused approximately

5  $70,975.29 in loss, across 21 victims, to Synchrony.   At all times

6  relevant in this matter, Synchrony was a financial institution

7  insured by the Federal Deposit Insurance Corporation, and operated

8  and administered CareCredit accounts.   Defendant himself profited at

9  least $20,000 from his part of the fraud, and knew what he was doing

10  was illegal.

11                          SENTENCING FACTORS

12         12.   Defendant understands that in determining defendant's

13  sentence the Court is required to calculate the applicable Sentencing

14  Guidelines range and to consider that range, possible departures

15  under the Sentencing Guidelines, and the other sentencing factors set

16  forth in 18 U.S.C. § 3553(a).   Defendant understands that the

17  Sentencing Guidelines are advisory only, that defendant cannot have

18  any expectation of receiving a sentence within the calculated

19  Sentencing Guidelines range, and that after considering the

20  Sentencing Guidelines and the other § 3553(a) factors, the Court will

21  be free to exercise its discretion to impose any sentence it finds

22  appropriate up to the maximum set by statute for the crimes of

23  conviction.

24  //

25  //

26  //

27

28

                                    9

13.   Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 7 | U.S.S.G. § 2B1.1(a)(1) |
| Specific Offense Characteristic (more than $40,000 in loss) | +6 | U.S.S.G. § 2B1.1(b)(1)(D) |
| Specific Offense Characteristic (offense involved 10+ victims) | +2 | U.S.S.G. § 2B1.1(b)(2)(A) |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

14.   Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

15.   Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

16.   Defendant understands that by pleading guilty, defendant gives up the following rights:

a.   The right to persist in a plea of not guilty.

b.   The right to a speedy and public trial by jury.

c.   The right to be represented by counsel -- and if necessary have the court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the court appoint counsel -- at every other stage of the proceeding.

d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.   The right to confront and cross-examine witnesses against defendant.

f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF APPEAL OF CONVICTION</u>

17.   Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's convictions on the offenses to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

<u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE</u>

18.   Defendant agrees that, provided the Court imposes a total term of imprisonment on all counts of conviction of no more than 21 months, defendant gives up the right to appeal all of the following:

11

(a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the amount and terms of any restitution order, provided it requires payment of no more than $70,975.29; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in General Order 18-10 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

19.   Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

20.   The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment of no less than 15

12

months, the USAO gives up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to appeal the amount of restitution ordered if that amount is less than $$70,975.29.

### RESULT OF WITHDRAWAL OF GUILTY PLEA

21.  Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

### RESULT OF VACATUR, REVERSAL OR SET-ASIDE

22.  Defendant agrees that if any count of conviction is vacated, reversed, or set aside, the USAO may: (a) ask the Court to resentence defendant on any remaining counts of conviction, with both the USAO and defendant being released from any stipulations regarding sentencing contained in this agreement, (b) ask the Court to void the entire plea agreement and vacate defendant's guilty pleas on any remaining counts of conviction, with both the USAO and defendant

13

being released from all their obligations under this agreement, or (c) leave defendant's remaining convictions, sentence, and plea agreement intact.  Defendant agrees that the choice among these three options rests in the exclusive discretion of the USAO.

<u>EFFECTIVE DATE OF AGREEMENT</u>

23.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

<u>BREACH OF AGREEMENT</u>

24.  Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas, and (b) the USAO will be relieved of all its obligations under this agreement.

25.  Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

14

a.   Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.   Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.   Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

<u>COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES</u>
<u>OFFICE NOT PARTIES</u>

26.  Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

27.  Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information

15

to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 13 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

28.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

29.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional

16

1  promise, understanding, or agreement may be entered into unless in a

2  writing signed by all parties or on the record in court.

3  <center>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</center>

4       30.   The parties agree that this agreement will be considered

5  part of the record of defendant's guilty plea hearing as if the

6  entire agreement had been read into the record of the proceeding.

7  AGREED AND ACCEPTED

8  UNITED STATES ATTORNEY'S OFFICE
   FOR THE CENTRAL DISTRICT OF
9  CALIFORNIA

10  NICOLA T. HANNA
    United States Attorney

11

12  _____          9/23/19
                                         Date _____
13  EDWARD HAN
    Assistant United States Attorney

14  _____          9-21-19
                                         Date _____
15  BARRY LEE BIDDLE
    Defendant

16  _____          9-21-19
                                         Date _____
17  JELANI J. LINDSEY
    Deputy Federal Public Defender
18  Attorney for Defendant
    BARRY LEE BIDDLE

19

20

21          <center>CERTIFICATION OF DEFENDANT</center>

22       I have read this agreement in its entirety.  I have had enough

23  time to review and consider this agreement, and I have carefully and

24  thoroughly discussed every part of it with my attorney.  I understand

25  the terms of this agreement, and I voluntarily agree to those terms.

26  I have discussed the evidence with my attorney, and my attorney has

27  advised me of my rights, of possible pretrial motions that might be

28  filed, of possible defenses that might be asserted either prior to or

<center>17</center>

1  at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),
2  of relevant Sentencing Guidelines provisions, and of the consequences
3  of entering into this agreement.  No promises, inducements, or
4  representations of any kind have been made to me other than those
5  contained in this agreement.  No one has threatened or forced me in
6  any way to enter into this agreement.  I am satisfied with the
7  representation of my attorney in this matter, and I am pleading
8  guilty because I am guilty of the charges and wish to take advantage
9  of the promises set forth in this agreement, and not for any other
10 reason.

11
12 BARRY LEE BIDDLE                          Date  9-21-19
13 Defendant
14
15
16              CERTIFICATION OF DEFENDANT'S ATTORNEY
17     I am BARRY LEE BIDDLE's attorney.  I have carefully and
18 thoroughly discussed every part of this agreement with my client.
19 Further, I have fully advised my client of his rights, of possible
20 pretrial motions that might be filed, of possible defenses that might
21 be asserted either prior to or at trial, of the sentencing factors
22 set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines
23 provisions, and of the consequences of entering into this agreement.
24 To my knowledge: no promises, inducements, or representations of any
25 kind have been made to my client other than those contained in this
26 agreement; no one has threatened or forced my client in any way to
27 enter into this agreement; my client's decision to enter into this
28 agreement is an informed and voluntary one; and the factual basis set

18

1  forth in this agreement is sufficient to support my client's entry of

2  guilty pleas pursuant to this agreement.

3

                                                    9-21-19

4  JELANI J. LINDSEY                        Date
   Deputy Federal Public Defender
5  Attorney for Defendant
   BARRY LEE BIDDLE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                          19