NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
JERRY C. YANG
Assistant United States Attorney
Chief, Riverside Branch Office
JULIUS J. NAM (California Bar No. 288961)
Assistant United States Attorney
Deputy Chief, Riverside Branch Office
    3403 10th Street, Suite 200
    Riverside, California 92501
    Telephone:     (951) 276-6942
    Facsimile:     (951) 276-6202
    E-mail:        julius.nam@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ED CR No. 18-200-SVW-2 |
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION FOR DEFENDANT BARRY LEE BIDDLE |
| v. | Sentencing Date:    10/19/2020 |
| BARRY LEE BIDDLE, | Sentencing Time:    11:00 a.m. |
| Defendant. | Location: Courtroom of the Hon. Stephen V. Wilson |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Julius J. Nam, hereby files its sentencing position for defendant BARRY LEE BIDDLE. The government's sentencing position is based upon the attached memorandum of points and authorities, the files and records in this case, the Presentence Investigation Report submitted by the United States Probation Office, and any other evidence or argument that the Court may wish to consider at the time of sentencing.

The government respectfully requests the opportunity to
supplement its position or respond to defendant as may become
necessary.

Dated: October 7, 2020                Respectfully submitted,

                                      NICOLA T. HANNA
                                      United States Attorney

                                      BRANDON D. FOX
                                      Assistant United States Attorney
                                      Chief, Criminal Division

                                      JERRY C. YANG
                                      Assistant United States Attorney
                                      Chief, Riverside Branch Office


                                      _____/s/_____
                                      JULIUS J. NAM
                                      Assistant United States Attorney

                                      Attorneys for Plaintiff
                                      UNITED STATES OF AMERICA

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES...................................1

I.    INTRODUCTION....................................................1

II.   DEFENDANT'S OFFENSE CONDUCT.....................................2

III.  THE PRESENTENCE INVESTIGATION REPORT...........................4

IV.   THE GOVERNMENT'S SENTENCING CALCULATIONS AND
      RECOMMENDATIONS................................................5

      A.   "MORE THAN 10 VICTIMS" ENHANCEMENT........................6

      B.   OBSTRUCTION OF JUSTICE ENHANCEMENT........................7

      C.   AGGRAVATING ROLE ENHANCEMENT..............................8

      D.   STIPULATED RESTITUTION AMOUNT.............................8

V.    ARGUMENT......................................................10

      A.   LEGAL STANDARD...........................................11

      B.   DEFENDANT'S OFFENSE AND PERSONAL HISTORY,
           § 3553(A)(1)-(2).........................................11

      C.   RESPECT FOR THE LAW, PROTECTION OF COMMUNITY,
           DETERRENCE, AND AVOIDANCE OF UNWARRANTED DISPARITIES,
           § 3553(A)(3)-(7).........................................13

      V.   CONCLUSION...............................................14

i

**TABLE OF AUTHORITIES**

**CASES**

<u>United States v. Cantrell</u>, 433 F.3d 1296 (9th Cir. 2006)...........11

<u>United States v. Moreland</u>, 622 F.3d 1147 (9th Cir. 2010)........9, 10

<u>United States v. Nichols</u>, 464 F.3d 1117 (9th Cir. 2006)...........11

<u>United States v. Treadwell</u>, 593 F.3d 990 (9th Cir. 2010)..........13

**STATUTES**

18 U.S.C. § 1073.................................................7

18 U.S.C. § 1349.................................................1

18 U.S.C. § 3553(a)..........................................11, 13

18 U.S.C. § 3663.................................................9

18 U.S.C. § 3663A................................................9

18 U.S.C. § 3664.............................................9, 10

**OTHER AUTHORITIES**

USSG § 2B1.1...............................................4, 5, 6

USSG § 2X1.1.................................................4, 5

USSG § 3B1.1....................................................4

USSG § 3C1.1.................................................5, 7

USSG § 3E1.1....................................................6

USSG §§ 5E1.2...................................................5

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3       On October 15, 2019, defendant Barry Lee Biddle pleaded guilty

4 to Count Five of the five-count Indictment in United States v. Barry

5 Lee Biddle, ED CR 18-200-SVW-2, which charges defendant with

6 conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349.[1]

7 (Dkt. Nos. 80, 88.)  In sum, between 2009 and 2013 defendant was

8 part of a conspiracy that operated a fraudulent telemarketing

9 business, whose employees made mass marketing calls to victim job

10 seekers with false promises of nonexistent job leads that induced

11 the victims to pay for fraudulent background checks that were never

12 conducted.  The aggregated amount of monetary loss to victim job

13 seekers over the 4-year period of fraud was approximately

14 $2,181,316.42.  For the reasons set forth below and pursuant to the

15 terms of the plea agreement, the government recommends a sentence of

16 78 months' imprisonment, a three-year term of supervised release,

17 restitution in the amount of $2,181,316.42, and a mandatory special

18 assessment of $100.  Consistent with the plea agreement, the

19 government also recommends that a sentence imposed this case run

20 concurrently with the sentence imposed in United States v. Barry Lee

21 Biddle, CR 18-150-AB.

22 ///

23

24     [1] On October 25, 2019, defendant also pleaded guilty to seven
counts of bank fraud in violation of 18 U.S.C. § 1344(2), in ED CR
25 18-150-AB, United States v. Barry Lee Biddle, in which defendant is
the sole defendant.  That case involves a loss amount of $70,975.29,
26 and the parties have agreed to 15 offense levels in the plea
agreement, with each party reserving the right to argue additional
27 offense characteristics, adjustments, and departures.  As part of the
plea agreements in that case as well as this case, the government has
28 agreed to seek concurrent sentences in the two cases, while defendant
has agreed to seek a high-end Guidelines sentence in this case.

## II. DEFENDANT'S OFFENSE CONDUCT

From May 2009 through July 30, 2013, in Riverside County, California, defendant and his co-defendants conspired to commit fraud through the use of a telemarketing business that went by "Contractor Management," "Contracting Crews," "Construction Crews," "Trade Crews," "Contractor 411," "Commercial Crews," "US Tradepros," "US Workmen," "IPower Marketing," and "IPower Marketing and Productions," among others, at different times. (PSR ¶ 15.) Defendant and his co-defendants also owned and controlled "Fed Check," a separate company that purported to conduct background checks. (Id.) Co-defendant Lisa Camp was the organizer and leader of the conspiracy, while defendant, who was in romantic relationship with co-defendant Lisa Camp and lived with her, worked for the telemarketing business, which was owned and operated by co-defendant Lisa Camp. (PSR ¶ 21.)

The telemarketing business defrauded individual victims seeking jobs by making false statements and guarantees, and omitting material information, regarding the telemarketing business's ability and intention to find job leads and work orders. (PSR ¶ 16.) The telemarketing business employed salespersons and used an auto-dialer service to contact prospective job seekers. (PSR ¶ 17.) Using scripts provided by defendant and his co-defendants, the salespersons made false statements and omitted material information to induce the victim job seekers to pay for background check. (Id.) Specifically, the telemarketing business, through its websites and salespersons, made the following false statements: telemarketing business had contracts with banks involving bank-owned properties; the telemarketing business or the banks with which it purportedly contracted would provide job leads and work orders to the victim job

2

1   seekers; and work repairing bank-owned properties was available in

2   each victim job seeker's geographic area.  (PSR ¶ 19.)

3        With defendant's assistance, the salespersons of the

4   telemarketing business told each victim job seeker that a background

5   check was required before job leads and work orders could be sent--

6   which a pretext for collecting money from the victim job seekers.

7   (PSR ¶¶ 16-18.)  The telemarketing business then charged each victim

8   job seeker a fee of $39, $60, or $99 for background check, which

9   could be paid over the telephone or on the Internet via the Fed Check

10  website.  (PSR ¶ 17.)  Each victim job seeker was told that if he or

11  she did not pass the background check, the background check fee would

12  be refunded.  (Id.)  The telemarketing business then kept the

13  background check fee, which was deposited into a bank account

14  controlled by the telemarketing business, without conducting a

15  background check or refunding the fee to the victim job seeker.  (PSR

16  ¶ 20.)  The aggregated amount of monetary loss to victim job seekers

17  over the 4-year period of fraud was approximately $2,181,316.42.

18  (PSR ¶ 26.)

19       Defendant worked with co-defendant Lisa Camp in initiating the

20  telemarketing business.  (PSR ¶ 22.)  Defendant set up, maintained,

21  and operated the workstations, computers, phone network, and websites

22  used by the telemarketing business, including the FedCheck website.

23  (Id.)  He created false recordings using aliases that were sent to

24  consumers via the auto-dialer service and provided the technical

25  support.  (Id.)  Defendant also trained and supervised at least one

26  other person to do information technology ("IT") work for the

27  telemarketing business.  (PSR ¶ 23.)

28  ///

III. THE PRESENCE INVESTIGATION REPORT

On January 6, 2020, the United States Probation Office ("USPO") filed its Presentence Investigation Report ("PSR") in this matter. (Dkt. No. 102.)  The USPO determined, in large part in accordance with the parties' plea agreement, that:

1.   defendant's United States Sentencing Guidelines ("USSG" or "Guidelines") base offense level is 7 under USSG §§ 2X1.1(a), 2B1.1(a)(1);

2.   he is subject to a 16-level enhancement for loss more than $1,500,000 but less than $3,500,000 under § 2B1.1(b)(1)(I); and

3.   he is subject to a 2-level enhancement for commission of the offense through mass-marketing under § 2B1.1(b)(2)(A)(ii).[2] (PSR ¶¶ 32-34.)

In addition, the USPO determined that defendant is subject to a 3-level enhancement for being a manager or a supervisor of an employee of the telemarketing business under USSG § 3B1.1(b), on which the parties have not reached an agreement.  (PSR ¶¶ 36-39.) The inclusion of this role enhancement resulted in a combined offense level of 28.  (PSR ¶ 41.)

After adjusting for a 3-level reduction for acceptance of responsibility, the PSR reached a total offense level of 25.  (PSR ¶¶ 43-45.)  Defendant has 4 criminal history points, placing him in criminal history category III.  (PSR ¶¶ 43-47.)  Thus, the USPO identified the applicable Guidelines imprisonment range to be 70 to 87 months (Zone D) and the applicable Guidelines range for a

---

[2] In the plea agreement, the parties agreed to a two-level enhancement under the same Guidelines provision (USSG § 2B1.1(b)(2)(A)(ii)) for ten or more victims.

4

supervised release term to be 1 to 3 years.  (PSR ¶¶ 120, 123.)  The
USPO found defendant to be ineligible for probation because the
applicable Guidelines range is in Zone D of the Sentencing Table.
(PSR ¶ 125.)  Further, the USPO identified the applicable Guidelines
range for the fine as $10,000 to $100,000 pursuant to USSG
§§ 5El.2(c)(3), (h)(1).  (PSR ¶ 128.)  The USPO determined that
"[r]estitution shall be ordered, unless the court finds, from facts
on the record, that the number of identifiable victims is so large as
to make restitution impracticable."  (PSR ¶ 131.)  The USPO did not
identify any grounds for a departure or a variance.  (PSR ¶¶ 134,
135.)

In its disclosed sentencing recommendation letter, the USPO
recommended the following: 87 months' imprisonment, a three-year term
of supervised release, a waiver of all fines due to defendant's
inability to pay, no restitution finding due to a large number of
identifiable victims to make restitution practicable, and a mandatory
special assessment of $100. (Dkt. No. 101.)

## IV.  THE GOVERNMENT'S SENTENCING CALCULATIONS AND RECOMMENDATIONS

Concurring in large part with the USPO's calculations, the
government's sentencing calculations are as follows:

| | | |
|---|---|---|
| Base Offense Level | 7 | USSG §§ 2X1.1(a), 2Bl.1(a)(1) |
| Loss of Over $1.5 million | | |
| and up to $3.5 million | 16 | USSG § 2Bl.1(b)(1)(I) |
| Ten or More Victims | 2 | USSG § 2Bl.1(b)(2)(A)(i) |
| Obstruction of Justice | 2 | USSG § 3C1.1 |
| Acceptance of Responsibility | -3 | USSG § 3E1.1 |
| **Total Offense Level** | **24** | |

///

With a total offense level of 24 and a criminal history category of III, the applicable Guidelines imprisonment range is 63 to 78 months and the applicable Guidelines range for a supervised release term is 1 to 3 years.

Based on the above calculations and the reasons set forth below, the government respectfully recommends a high-end sentence of 78 months' imprisonment, a three-year term of supervised release, restitution in the amount of $2,181,316.42, and a mandatory special assessment of $100.  Consistent with the plea agreement, the government also recommends that a sentence imposed this case run concurrently with the sentence imposed in United States v. Barry Lee Biddle, CR 18-150-AB.

### A.   "MORE THAN 10 VICTIMS" ENHANCEMENT

In reaching its recommendation, the government disagrees with the USPO's application of the 2-level enhancement for commission of the offense through mass marketing under USSG § 2B1.1(b)(2)(A)(ii). Instead, as stipulated in the plea agreement, the government asks this Court to find that a 2-level enhancement for "more than 10 victims" under USSG § 2B1.1(b)(2)(A)(i) is appropriate.  While the parties' and the USPO's choices of alternative provisions of § 2B1.1(b)(2)(A) result in the same 2-level enhancement (given that only one of the 2 provisions, but not both, may apply in this case), the government stands by the appropriateness of the parties' agreed-upon Guidelines factor of "more than 10 victims," as "over 3800 victim job seekers have been identified" as of the preparation of the PSR.  (PSR ¶¶ 26, 116.)

///

///

**B.    OBSTRUCTION OF JUSTICE ENHANCEMENT**

As the Court is well aware, defendant is currently in fugitive status, having absconded on August 8, 2020 while under pretrial supervision and not responded to communications by his supervising officer with the USPO.  In response, this Court issued a warrant for defendant on August 12, 2020.  (Dkt. No. 130; see also Notice of Government's Intent to Proceed With In Absentia Sentencing Hearings[3] (Dkt. No. 135).)  In so doing, defendant has not only violated the conditions of his bond that requires his to reside as approved by Pretrial Services and not relocate without permission, but also committed a new crime of fleeing to avoid prosecution, in violation of 18 U.S.C. § 1073, which is another violation of his pretrial release conditions.

Although the January 6, 2020 PSR does not address defendant's absconsion because defendant had not yet fled, the 2-level obstruction of justice enhancement under USSG § 3C1.1 now applies.  Under USSG § 3C1.1, defendant's flight and absconsion represent obstruction and impeding of the administration of justice with respect to defendant's sentencing of his offense of conviction.  As the commentary to § 3C1.1 identifies, "escaping . . . from custody before trial or sentencing; or willfully failing to appear, as ordered, for a judicial proceeding" constitutes a "covered conduct" that justifies the increase in offense level by 2 levels.  USSG § 3C1.1 cmt. n.3.  Accordingly, the Court should apply a 2-level increase of defendant's offense level for obstruction of justice.

---

[3] On the obstruction of justice enhancement, the government incorporates the facts and arguments presented to this Court regarding defendant's flight in the Notice of Government's Intent to Proceed With In Absentia Sentencing Hearings (Dkt. No. 135).

### C.   AGGRAVATING ROLE ENHANCEMENT

Although the USPO has determined that a 3-level enhancement for a supervisor-manager role in a conspiracy with five or more participants applies to defendant under USSG § 3B1.1(b), the government is not seeking that particular enhancement at sentencing. (PSR ¶¶ 36-39.)  The investigation in this case has identified evidence of defendant assisting co-defendant Lisa Camp in "initiating the telemarketing business by setting up, maintaining, and operating the workstation, computer, phone network, and websites used by the telemarketing business" and giving training to at least one person, S.S., to do IT work.  (PSR ¶ 38.)  And defendant certainly had significant authority and responsibilities in the conspiracy's telemarking business on matters relating to IT.  But unlike co-defendant Lisa Camp and the three other co-defendants who had direct managerial and supervisory responsibilities over other employees of the telemarking business, it is not entirely clear to the government that defendant had a direct supervisory or managerial authority over other members and employees of the conspiracy of the type that warrants the inclusion of an aggravating role enhancement.  Thus, the government is not seeking the supervisor-manager role enhancement.

### D.   STIPULATED RESTITUTION AMOUNT

The government respectfully asks this Court to order restitution that the parties have stipulated in the plea agreement in the amount of approximately $2,181,316.42 at the sentencing hearing.

The government strongly disagrees with the USPO's determination that restitution "is impractical given the large number of victims, the defendant's current lack of assets, and the relatively nominal nature his future income." (Dkt. No. 101.)  Such a recommendation,

1   despite the presentation of the list of more than 3,800 victims that
2   the government provided to the USPO prior to the preparation of the
3   PSR, goes against not only the parties' stipulation in the plea
4   agreement that "the applicable amount of restitution is approximately
5   $2,181,316.42" (Dkt. No. 80 at 5), but also the principle of
6   restitution to <u>identifiable victims</u> that animates the Mandatory
7   Victims Restitution Act ("MVRA"), 18 U.S.C. §§ 3663A, 3664.  Since
8   the disclosure of the PSR, the government has provided an updated
9   list of 4,183 victims to whom restitution is owed.  That updated list
10  is being separately filed under seal as Exhibit 1 to this sentencing
11  and other sentencing memoranda in this case.  (<u>See</u> Notice of Manual
12  Filing and its associated pleadings at Dkt. No. 141.)

13      The "primary and overarching goal" of the MVRA "is to make
14  victims of crime whole, to fully compensate these victims for their
15  losses and to restore these victims to their original state of well-
16  being."  <u>United States v. Moreland</u>, 622 F.3d 1147, 1170 (9th Cir.
17  2010).  Given that the government has now compiled the list of 4,183
18  identified victim job seekers who were unemployed or underemployed
19  when they were defrauded by defendant's conspiracy and sustained
20  specific financial injuries by defendant and his co-defendants, the
21  Court should order the specific restitution that the parties have
22  agreed to in the amount of $2,181,316.42 so that the defrauded
23  victims may be made whole.  The statute that governs general orders
24  of restitution provides that the Court "may also order restitution in
25  any criminal case to the extent agreed to by the parties in a plea
26  agreement," 18 U.S.C. § 3663, which is precisely what we have here.

27      The PSR incorrectly suggests that because the number of victims
28  is high and defendant's future earning potential is low, restitution

9

1    "appears impractical" (PSR ¶ 116), but that analysis contravenes the

2    text of the MVRA, which directs the USPO to inform the Court "[if]

3    the number or identity of victims cannot be reasonably ascertained,

4    or other circumstances exist that make this [restitution] requirement

5    clearly impracticable."  18 U.S.C. § 3664.

6        Here, the government has specifically identified 4,183 of

7    defendant's victims, including their names, addresses, and individual

8    loss amounts.  (See Exhibit 1 filed under seal.)  While the process

9    of returning the restitution amounts to individuals may not be easy,

10   it is far from impracticable.  The process will require nothing more

11   than sending letters to the identified victims to provide

12   instructions on reclaiming their losses, which is the same process

13   employed in most other fraud cases involving individual victims in

14   multiple states.  As the Ninth Circuit has noted, "[t]he intended

15   beneficiaries of the MVRA's procedural mechanisms are the victims,

16   not the victimizers."  Moreland, 622 F.3d at 1171 (citation and

17   internal quotation marks omitted).  If restitution is not ordered for

18   the 4,183 identified individual victims for the reasons provided by

19   the USPO, it would be defendant and co-defendants, the victimizers,

20   who will remain become beneficiaries of the MVRA, which cannot be the

21   intent of the MVRA.

22       Accordingly, the Court should order the stipulated restitution

23   amount of $2,181,316.42 at the sentencing hearing.

24   **V.   ARGUMENT**

25       The Court should sentence defendant to a high-end Guidelines

26   sentence of 78 months' imprisonment, a three-year term of supervised

27   release, restitution in the amount of $2,181,316.42, and a special

28   assessment of $100.  The government also recommends that a sentence

10

1    imposed this case run concurrently with the sentence imposed in

2    <u>United States v. Barry Lee Biddle</u>, CR 18-150-AB.[4]

3        This sentence is sufficient, but not greater than necessary, to

4    meet the sentencing goals set forth in 18 U.S.C. § 3553(a).

5    **A.    LEGAL STANDARD**

6        While not definitive, the Guidelines range provides the starting

7    point for finding a reasonable sentence and must then be considered

8    with the factors set forth in Section 3553(a).  <u>See</u> <u>United States v.</u>

9    <u>Cantrell</u>, 433 F.3d 1296, 1279 (9th Cir. 2006).  "To comply with the

10   requirements of <u>Booker</u>, the district court must have sufficiently

11   considered the Guidelines as well as the other factors listed in

12   § 3553(a).  This requirement does not necessitate a specific

13   articulation of each factor separately, but rather a showing that the

14   district court considered the statutorily-designated factors in

15   imposing a sentence."  <u>United States v. Nichols</u>, 464 F.3d 1117, 1125

16   (9th Cir. 2006) (citation omitted).

17   **B.    DEFENDANT'S OFFENSE AND PERSONAL HISTORY, § 3553(A)(1)-(2)**

18       Over more than four years, defendant participated in a scheme to

19   defraud tens of thousands of individuals from across the United

20   States and caused more than $2.1 million in aggregated losses from

21

22       [4] As previously noted, pursuant to plea agreements in this case

23   and in CR 18-150-AB, defendant has agreed to recommend a high-end
     Guidelines sentence in this case in exchange for the government's

24   recommendation of concurrent sentences in both cases.  Indeed, the
     government recommends concurrent sentences in the two cases.

25       The discussion in this section of how the § 3553(a) factors
     apply in this case is meant to support the government's request for a

26   within-Guidelines sentence of 78 months' imprisonment, which
     represents a significant term of imprisonment requiring a

27   correspondingly substantial justification.  Nothing in this
     sentencing position should be construed as recommending or suggesting

28   that a sentence of more than 78 months is appropriate under the
     § 3553(a) factors.

the victims.  (PSR ¶ 26.)  He used his significant computer and IT skills to "set up, maintain[], and operate[] the workstation, computer, phone network, and websites used by the telemarketing business, including the FedCheck website."  (PSR ¶ 22.)  He also "created false recordings using aliases that were sent to consumers via the auto-dialer service, [and] provided the technical support" to enable the mass fraud perpetrated by the conspiracy.  (Id.)  Helped by defendant's indispensable skilled contributions, the scheme defrauded unsuspecting unemployed and underemployed members of the public into paying $99 that resulted in no job leads.  Through empty promises of employment opportunities and elaborate technological processes of fraud designed by defendant, defendant's conspiracy deprived victims of the little money they had.

In addition, defendant's history of property and financial crimes goes back nearly 25 years.  Since 1996, defendant has been convicted of six property crimes and two drug crimes, including the federal felony conviction for bank fraud in the Central District of California, which is pending sentencing.  (PSR ¶¶ 50-60.)  Throughout his adulthood, defendant has repeatedly and unrepentantly lived a life of fraud, even boasting to federal agents in his bank fraud case that he was a "computer geek" who is "the wizard in the closet" in using computers to defraud financial institutions.  (PSR ¶¶ 60, 61.)  The large-scale $2.1 million fraud that defendant helped orchestrate as part of this conspiracy stands in the line of a long-running trajectory of serious criminal conduct.

At the same time, the government notes that defendant has fully accepted responsibility for his offense in this case (as well as the bank fraud case pending sentencing).  Defendant appears to have had

some challenging mental health and substance abuse addiction history. (PSR ¶¶ 84-100.)  These are mitigating factors that the Court should consider in imposing a within-Guidelines sentence.

Upon balancing the seriousness of defendant's offense and long criminal history against defendant's acceptance of responsibility and mental health and substance abuse history, the government believes that the recommended within-Guidelines custodial sentence of 78 months is appropriate and just.

**C.   RESPECT FOR THE LAW, PROTECTION OF COMMUNITY, DETERRENCE, AND AVOIDANCE OF UNWARRANTED DISPARITIES, § 3553(A)(3)-(7)**

A 78-month sentence will also serve to protect the community from further crimes by defendant, afford adequate specific and general deterrence, and promote respect for the law.  Defendant's participation and facilitation of an elaborate, sophisticated fraud scheme involving multiple family members and other employees – after a long history of crime and repeated disregard for the property of others – demonstrates that he has a significant lack of respect for the law.  His role in the fraud scheme involved thousands of individual decisions over the course of at least 4 years.  During this period, defendant and his co-defendants were essentially making their living by committing fraud.  Thus, a significant period of custodial sentence, which the custodial sentence of 78 months would provide, is necessary to protect the community from defendant, provide deterrence, and promote law and justice.

In addition, the Court should minimize sentencing disparities among similarly-situated defendants by imposing a within-Guidelines sentence.  Using the correctly calculated sentencing guidelines as a starting point for sentencing helps accomplish this goal.  See,

e.g., <u>United States v. Treadwell</u>, 593 F.3d 990, 1011-12 (9th Cir. 2010). With defendant who has stipulated to a high-end sentence in this case, the government seeks a high-end sentence of 78 months, which should run concurrently with the sentence in <u>United States v. Barry Lee Biddle</u>, CR 18-150-AB. Such a sentence is a fair and generous sentence that allows defendant to avoid potentially much longer custodial time by being subject to two separate sentences in this case – while avoiding unwarranted sentencing disparities among similarly-situated defendants.

**V.    CONCLUSION**

The government respectfully recommends that the Court impose a sentence of 78 months' imprisonment, a three-year period of supervised release, restitution in the amount of $2,181,316.42, and a mandatory special assessment of $100. The government also recommends that the sentence imposed in this case run concurrently with the sentence in <u>United States v. Barry Lee Biddle</u>, CR 18-150-AB.